LAW OFFICE OF PETER A. ROMERO

promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

November 5, 2019

<u>Via ECF</u>
Hon. Steven I. Locke
United States Magistrate Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:   *Athala Astudillo v. Island Wide Building Services Inc., et al.*
             <u>Docket No.: 17-cv-06835 (RRM) (SIL)</u>

Dear Judge Locke:

      This firm represents Plaintiff Athala Astudillo and opt-in Plaintiffs Elida Gonzalez, Brenda Benitez Umana, Allan Barahona, Oscar A. Melendez Quijano, David Arevalo, Antonio Alex Martinez and Orfilia Rodriguez (collectively as "Plaintiffs"), in the above-referenced action, which asserts claims against Defendants Island Wide Building Services Inc. and Paul Pisano (collectively as "Defendants") (Plaintiffs and Defendants together as the "Parties"), their former employers. In the Complaint, Plaintiffs bring claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), unpaid spread of hours compensation under the NYLL, and failure to provide a compliant wage notice pursuant to NYLL § 195(1). D.E. 5. The Parties have reached a resolution of this action. Accordingly, Plaintiffs now submit this joint motion for approval, pursuant to <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement with respect to Plaintiffs' FLSA claims.[1] A copy of the parties' settlement agreement is attached hereto as Exhibit A.

      *Pro se* opt-in Plaintiffs Jose Caceres and Gladys Villatoro did not participate in the Parties' mediation and are not parties to this settlement. Defendants are separately seeking dismissal of Caceres' and Villatoro's claims for failure to prosecute their claims, pursuant to Fed. R. Civ. P. 41.

**Procedural History**

      On November 21, 2017, Plaintiff Astudillo filed her Complaint. D.E. 1. On November 27, 2017, Plaintiff Astudillo filed an Amended Complaint. D.E. 5. On February 5, 2018, Defendants filed an Answer to the Amended Complaint. D.E. 9. On April 24, 2018, Plaintiff

---

[1] The parties do not seek the Court's approval with respect to the settlement of Plaintiffs' non-FLSA claims as there is no requirement for the Court to do so.

LAW OFFICE OF PETER A. ROMERO PLLC   ·   LABOR AND EMPLOYMENT LITIGATION
825 Veterans Hwy, Hauppauge, New York 11788   ·   (631) 257-5588   ·   overtimelawny.com

Astudillo filed a motion for conditional certification of a collective action with respect to her FLSA overtime claim. D.E. 15. On June 11, 2018, the Court granted that motion and Plaintiff Astudillo subsequently circulated notice of this FLSA action. D.E. 17. Thereafter, several additional parties joined as opt-in Plaintiffs.

On August 20, 2018, the Court referred this matter to mediation before the EDNY mediation panel. Prior to mediation, the parties exchanged document discovery pertaining to the Plaintiffs' claims. On October 15, 2018, the parties engaged in a successful mediation before EDNY panel mediator Raymond Nardo, Esq. Following the parties' contentious, arms'-length negotiations, the parties were able to reach a resolution of this action at that mediation. The settlement agreement between the Plaintiffs and the Defendants provides for payment of a sum of $60,000, inclusive of attorneys' fees and costs. Pursuant to the settlement, Plaintiffs will receive $38,866.67 and Plaintiffs' counsel will receive a total sum of $21,133.33, consisting of $19,433.33 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $1,700.00 for costs. The settlement is secured by confessions of judgment signed by all Defendants in the event of a default.

### **The Court Should Approve the Settlement Agreement as Fair and Reasonable**

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The Wolinsky factors require consideration of the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Plaintiffs contend that they worked for Defendants as non-exempt cleaners in various buildings. Plaintiffs allege that they regularly worked more than forty hours per week. For this work, Plaintiffs contend that they were paid various hourly rates for both their regular and overtime hours worked without receiving an overtime premium for hours worked in excess of forty. Plaintiffs also contend that certain hours were worked off the clock, and therefore are not reflected in Defendants' time records, that Plaintiffs allege were still paid at their regular hourly rates of pay for those hours worked. Thus, Plaintiffs assert that they were not paid overtime compensation at time and one-half their regular rates of pay for each hour worked in excess of 40 per week under the FLSA.

Critically, the parties have several key disputes that impact the amount of recovery and liability in this lawsuit. Defendants dispute the number of hours worked by Plaintiffs and reject that Plaintiffs worked any hours off the clock. Defendants also contend that Plaintiffs were paid properly for all hours worked under the FLSA. In support of this position, Defendants have produced compensation records for Plaintiffs' employment, which would create challenges for Plaintiffs to overcome at trial with respect to their amount of hours worked each week and compensation paid. However, Plaintiffs allege that Defendants' records are inaccurate. Defendants also deny that Plaintiffs are entitled to liquidated damages under the FLSA, even if Plaintiffs are successful at trial. Thus, the parties' respective positions evince substantial risks for both parties at trial which could impact the amount of Plaintiffs' recovery and could result in a loss at trial by either party.

Additionally, Defendants assert, and Plaintiffs' counsel verified to the extent possible, that Defendants have limited financial resources and likely cannot afford a greater settlement or judgment. Specifically, prior to this settlement, Defendants entered into a settlement agreement with the Department of Labor for a substantial sum that Defendants are already obligated to pay over a period of time, severely limiting the amount of funds available to the Plaintiffs.

Plaintiffs have calculated their precise damages, based on the discovery in this matter and their anticipated testimony were this matter to proceed, in order to assess their best possible recovery in this litigation. Making all reasonable assumptions in their favor, Plaintiffs' best potential recovery under the FLSA at trial amounts to $7,820.14 for unpaid FLSA wages and $7,820.14 for FLSA liquidated damages.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in full formal written and document discovery, depositions of numerous Plaintiffs, Defendants, and likely several non-party witnesses. This settlement also avoids potential partial summary judgment motion practice by either party and trial, which would result in a months' or years' long delay to obtaining a recovery for the Plaintiffs even if they are successful at trial, and then may potentially face future appeals. Moreover, all parties face the risk of losing at trial, either in whole or in part. Indeed, if Plaintiffs were to succeed on liability but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiffs would not be entitled to liquidated damages under the FLSA, reducing Plaintiffs' available FLSA damages by half to $7,820.14. This would be reduced further should Plaintiffs not prevail on the issue of willfulness as the FLSA statute of limitations would be reduced to two, rather than three, years. This would reduce Plaintiffs' unpaid FLSA overtime compensation to just $3,737.58. Thus, by settling at this stage, Plaintiffs ensure that they will receive a recovery in this matter. Further, Plaintiffs' award under the settlement permits them to recover nearly all of their unpaid FLSA overtime compensation and FLSA liquidated damages, even after deducting for costs and attorneys' fees.

Accordingly, although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the possibility that they could receive much lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Moreover, Defendants' claimed financial circumstances may make it difficult to collect a higher judgment, even if one were achieved, which could leave Plaintiffs

with nothing.  Thus, assuming this settlement is approved, Plaintiffs will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

Additionally, the settlement here was reached only after the parties engaged in document discovery pertaining to the Plaintiffs, providing them with a clear assessment of their available damages, contentious, arms'-length settlement discussions, and mediation with the assistance of an experienced mediator.  Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement).  Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it.  For instance, the release in the Settlement Agreement is limited to the wage-related claims that Plaintiffs asserted in this action.  The release does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. See Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1-2 (S.D.N.Y. July 6, 2015); Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. March 30, 2015) (prohibiting releases that "purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues" but notes additional claims may be released in appropriate circumstances); Cheeks, 796 F.3d at 206 (noting judicial approval of settlements is necessary to avoid an "overbroad release" that waives all possible claims and to prevent potential abuse or overreach in settlements).  Here, the release is narrowly tailored to release only claims relevant to the instant action and those relevant to the parties' settlement negotiations.  Likewise, the agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood, 2015 WL 4111668, at *1 (citing Lopez, 96 F. Supp. 3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181).

**The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable**

In addition to assessing the reasonableness of the settlement award, most courts since Cheeks have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336).  When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336).

In this case, the portion of the settlement amount attributable to attorneys' fees is $19,433.33, or 1/3 or the net settlement amount after deducting for litigation costs. Plaintiffs' counsel's request that the Court approve fees of 1/3 of the settlement is "consistent with the trend in this Circuit." Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases). Courts in this Circuit routinely approve attorney's fees awards in the amount of one-third of the total settlement. See McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 09, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiffs' counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success").

Here, Plaintiffs' counsel investigated the Plaintiffs' claims, conducted an in-depth and detailed inquiry regarding Plaintiffs' job duties, exempt status, their work hours and compensation received, commenced this action, filed a motion for conditional certification of the collective action under the FLSA, exchanged document discovery, created a detailed assessment of Plaintiffs' damages, attended a mediation, negotiated a settlement and attended numerous conferences in this action. Due to the contingent nature of the case, Plaintiffs' counsel undertook these efforts with no ultimate guarantee of compensation. Plaintiffs' counsel was zealous in the pursuit of Plaintiffs' litigation objectives and secured a favorable result on the Plaintiffs' behalf. The settlement will be made available to the Plaintiffs without the uncertainty and delay of trial.

Lastly, Plaintiffs' counsel seeks reimbursement for $1,700.00 in advanced litigation costs, which consists of the filing fee, service of process for the pleadings, mailing of the collective action notices, and the mediation fee.

Accordingly, Plaintiffs' counsel's requests for attorneys' fees in the amount of $19,433.33 and expenses in the amount of $1,700.00 should be approved as reasonable.

      In light of the foregoing, the Parties respectfully request that the Court approve their settlement and dismiss this matter with prejudice, while maintaining jurisdiction to enforce the terms of the settlement. The Parties have submitted a copy of a Proposed Stipulation and Order of Dismissal with Prejudice with their Settlement Agreement.

                          Respectfully submitted,

                          /S/ Peter A. Romero, Esq.
                          PETER A. ROMERO, ESQ.

C:     All Counsel of Record *via* ECF